Our next case is James v. j2 Cloud Services, LLC, number 17-1506. Good morning, your honors. Good morning, Mr. Voigt. You reserved five minutes of your time? I did, your honor. Okay. Did I pronounce your name correctly? Voigt, your honor. Okay. But I heard it in many different ways, for simple letters. Your honors, the lower court dismissed my client's claims based on an alleged lack of jurisdiction under Rule 12b-1. In that ruling, the court made several errors of both effect, and I believe one of law. First of all, with respect to the lack of... why there was a lack of jurisdiction, the court held that my client had lost, or James had lost, equitable title to the patent. There was no mention about a loss of legal title to the patent. And as this court has enunciated in a number of opinions, patents are full of a bundle of rights. Some of them are legal title, which gives you the right to pursue for past damages, for example. Can I just change the terminology? I'm not sure this equitable title, legal title, at least helps me think about it. The district court found a lack of Article III standing on the theory that your client would not stand to gain anything if, on the merits, your client won and became the sole inventor. Right? And so the question is, because the law, we assume, for a standing analysis, that you're right about the merits, so we're now going to assume that your client will become named as the sole inventor. It follows from federal law that if nothing else happens, your client has ownership. And then the question is, is there at this stage of the case something that tells us that your client gave away or promised to give away that ownership interest? Am I conceptualizing this correctly? Yes, sir. I think the real issue was the implied in fact contract, I think is the analysis. Well, there are two related but somewhat distinct bases for the possibility that your client has at least promised to give away ownership interest. One is the software development agreement, which is not even between Mr. James and JFACS, but rather between an artificial legal entity, a partnership, and JFACS. And then the other is the hired to invent doctrine, whose status as federal law or state law, I at least am somewhat unclear about. But among other things, I can't find has ever been applied to an agreement between two artificial legal entities. That is, all the cases, as far as I can tell, involve a real live human being who can be an employee, and your agreement was between a partnership and JFACS.  And your point about the software development agreement is that whatever else it does, you cannot conclude at this stage of the proceedings that it gave away or promised to give away the ownership rights. It sure seems to be about copyright and not patents. That's exactly our point. And then also the fact, to further cement that conclusion home, so to speak, is that the inventive work was done months before the execution of the software development agreement. And if you look at the very terms of the software development agreement, it's all forward-looking. For example, paragraph 2, it says the entity agrees to develop software solutions, write software routines, carry out testing, and otherwise provide technological solutions, whatever that term means. And if you look at the actual assignment clause, paragraph 3, it says JFACS shall become the sole owner of all code and compiled software solutions. Those are the only IP at issue, code and software solutions. Well, I don't think you want to downplay the word compiled because the term software solutions, it seems to me, is at least potentially broader. It could be the algorithms embodied in software. But when you add the word compiled, nobody compiles an algorithm. You're compiling source code into machine code. Well, that's the point. We don't know because we don't have a factual record. And if we're doing what equity demands, you need to have a factual record to do so. And we don't have one here at a motion to dismiss stage. It's just premature. But the further paragraph 3 goes on, as soon as it is developed, that is clear forward-looking language. Disagreement is all forward-looking. It doesn't look at anything that James did two months prior to... What's the significance in your mind of it being forward-looking? Well, it can't cover what was in the past unless it says so. Why wouldn't that cover something that happened in the past as soon as it is developed? And now you go, well, it was developed two years ago, and so that's covered. No, we pledge you it was developed several months earlier. I understand that. You're arguing, though, that this is only forward-looking, so it can't encompass any prior acts. But it certainly doesn't... Correct, because it's forward-looking. It doesn't refer to your past inventions, ideas, whatever you want to call it. It only looks at what you're going to do from this date forward. But if something's been already done in the past, it can't be an assignment of that already because that's already been created. This is only concerning itself with what will be created. And that's an important distinction because we're looking at, and part of the equity is, was he hired to invent or hired to implement? I mean, the case law makes a distinction there. The hired to implement is a shock right, for lack of a better word, and you just have a right to press. Can I ask you about the hired to invent? And this refers to something that may have passed more quickly than you were quite able to take in. I'm not sure what's been made of it. JFACS did not hire Mr. James. Correct. JFACS entered into a contract with GSP, a partnership. Correct. Are any hired to invent cases like that? Not that I'm aware of. All have been restricted to employees, as far as I can tell. And on the assumption that that's true as a descriptive matter of all the cases, why should that distinction make a difference if you think it does? Well, that distinction would make a difference because an equity wouldn't even apply to James, the individual, the inventor. There would be no basis to strip James, the inventor, of ownership in this instance. I don't understand that answer. What makes a difference if you hire two people that are a partnership or one person that's a sole employee to invent something for the purpose of the hired to invent doctrine? Isn't the whole point of it is if I'm a company and I hire you and say, I want you to go out and do this for me, I get the rights to that? What makes a difference if it's one person or a partnership for that doctrine? I mean, title has to be assigned or transferred. That's not the question I asked. What makes the difference? Let me make it simple. Assuming I think the hire to invent doctrine means if I hire you to do something for me and give you instructions on what to do, you never own the patent rights to that. I own the patent rights to that. What makes a difference if I hire you as an individual or you as a partnership? Or you as some kind of corporation even though you're the sole owner of the whole corporation? On one hand, it still comes down to what entity owns the rights to begin with. So is that the answer that it doesn't matter? In this case, even if it doesn't matter, it doesn't matter because the facts are too premature and factually... No, no, I understand that. You're answering questions. I just wanted to know what the difference between James as an individual person or James as part of a partnership was for purposes of the application of the hire to invent doctrine. I understand you would disagree with at least the vision of it I just articulated, which I'm not saying is the correct one. Correct. Quite honestly, I don't think in this instance, I mean, I don't think equity is going to make a difference or get it differently as compared to whether this was a legal entity. Maybe it wasn't, maybe it was. I do not know the answer to that. Maybe it's a factual consideration to be taken into account. Does it matter whether the person that's being hired is an independent contractor? The case law is unclear on that. Some courts have said it does matter. What's your argument? What's your position on that? My position is, Your Honor, that I think it should matter because you need more precise contracts. And to enable an employee, there's an implicit understanding that you're working for that person for whatever job responsibilities are. But in an independent contractor, you don't have that surrounding circumstances. It has to be defined by contract. If the person hiring the person doesn't specify exactly what they're getting and what they expect and what they expect to receive, I don't think you should be under burden on the independent contractor. I mean, copyright has a similar analogy. I work for hire. I mean, you specifically have to exclude that out from copyright if you hire a photographer to do something. So I think it can make a difference. I'm sorry, what does copyright? I think copyright has this notion if you don't specifically spell out in a work-for-hire what you can and can't do, the author of the copyright retains certain rights. I think it's in the work-for-hire doctrine. And I think contractually, again, it has to be for the median of the minds. It needs to be spelled out. And I think it does make a difference because when you have an employer relationship, there's implicit understandings. Are you saying that at least for independent contractors, the contract has to specifically say what the IP rights are going to be in order for them to be transferred to the company hiring an independent contractor? It certainly should be the burden on the company hiring a contractor to specify that. But if that's the case, then that writing would qualify under 261, wouldn't it? Yes, it would. Then would there be any applicability of the hire to invent doctrine whatsoever if we have a specific writing? I mean, isn't that the whole point of the hire to invent doctrine, at least as some of these really old Supreme Court cases and some references in some of our newer cases is that if somebody hires you to do a certain thing for them, that they're the ones that get the rights to the ownership of that invention, not you, because you were hired to invent it for them. And that we wouldn't need this doctrine if there was a specific agreement saying, I'm hiring you to invent this, I get the IP rights. I assume you're saying maybe it is meaningless distinction between employee and independent contractor. You're into your rebuttal time. Do you want to reserve it? I'll reserve it. Okay, thank you. Mr. Ruttenberg? Yes, good morning. Guy Ruttenberg for the appellates. We agree, obviously, that the independent contractor versus employee relationship is not determinative or even relevant. Standard parts is an independent contractor. How do we know that, by the way? I can't figure out how we know whether Mr. Peck was an independent contractor or something, some other kind of employee. I mean, he was getting a salary and then he had a bonus. What else do we know? We know he was a lawyer. He was actually an attorney that was engaged to do a project. And that part of the remuneration depended on the success of the project. I think in at least one case, in a concurrence, Judge O'Malley characterized that. I know, but that was a parenthetical without explanation. And I guess I've read Standard Peck several times and I don't understand how one can tell whether he was an employee or an independent contractor. Well, I guess that kind of goes to the point, which is there's no reason that I can think of, and there's no reason that I think has been articulated as to why the hired-to-invent doctrine should depend on whether or not someone is paid what would be a W-2 as opposed to a 1099 under some state law or, for that matter, under Australian law. So I haven't seen any reason why that would be a determinative factor. The factor is, under the case law, what's the intent of the relationship as determined by the facts. And what we have here – Before we get – I agree that the focus has to be on what this software development agreement sort of shows or indicates and what not, because the definition of the contract, as indeed it was in Standard Parts. Can I just ask you this question? Of course. Hired-to-invent doctrine, is that, in the post-ERI world, a matter of federal law anymore? So the way Teats looks at it, Teats suggests that it might be a matter of state law, and the states – Because it's all just about what's implicit in the relation and whether one would find an implied-in-fact transfer. True, based upon the facts, and it's not just the contract. There could be other facts as well that the court relied on in this case. But what Teats says, for example, in that case I believe it was Florida law, and the court basically said that Florida law looks to the pre-ERI case law like Standard Parts. And in this case, no one has argued to the district court that the case law should have been any different than that. For example, there was no argument that somehow California law or Delaware law or New York law or Australia law should have applied. California is where this court was for ERI doctrine purposes. The contract is governed by Delaware law. This individual had – I guess they had met in New York. He claims to be in Australia. The plaintiff had never argued below that somehow any of that should matter. And so like in the Teats case, what ended up happening was essentially they were applying the federal law as articulated by the Supreme Court. No one has suggested that that would make any difference, and I'm not aware of any reason why it should. So it's all about what the circumstances, probably most importantly the actual contractual relation involved here. But not only that, would support by way of an inference about intent to transfer. Right. Whether it's the contract or other factors, basically you look at the facts and figure out, is this a situation where there is any way that the contractor or employer, whatever you want to call him, whether that individual could have retained any rights? And in fact, the court here made specific factual findings that he did not retain rights. And I think Mr. James concedes in his – Factual findings on the Rule 12b-1 motion? Yes, sir. The court made factual findings that are cited in order. And in fact, Mr. James concedes in his brief, the legal standard here, although it's de novo on standing to the extent there are any factual findings, Mr. James concedes that those factual findings are actually reviewed for clear error. And the judge went through quite a few factors that you pointed to. First and foremost was the SDA itself, but beyond that – Well, let's focus on the SDA. Sure, sure. So the key provision, which I think the judge cited was – was it five point something? No, no, I don't know. The provision would be with the language about section three, I guess. JFAC shall become the sole owner of all code and compiled software solutions. That sounds to me – well, actually, it sounds very much to me like it is about the copyright interest in the product. Well, I think it says more than that because the rest of the sentence says the sole owner of all code and compiled software solutions as described in this agreement. In other words, whatever is described in this agreement was to create software solutions or code and compiled software solutions. And I think I should back up and say two things. Whatever – Mr. James was engaged to create software. Whatever he did – His partnership was. Right. Well, and I agree with that. He hasn't made that distinction, and I guess he's conceded that it doesn't matter. But whatever – What he's conceded is that he wins even without it. Okay, but my point is before today, we've never – no one has suggested that that would make a difference. Okay, so focus on the agreement. Sure. So whatever inventions he claims to have had, he either sold those inventions as part of the SDA or he abandoned them because he never – I'm sorry. Where do you get how he sold those inventions as part of the SDA? As part of the SDA, he says two things that are important here. What should I be looking at? It's Section 3 where he says JFACS – it's the language that Your Honor just quoted. Yeah. Which is that JFACS should be the sole owner of all code and compiled software solutions as described in this agreement. But there's additional language that the court cited to, which is that in the preamble itself, it says that it should be for the exclusive use. Exactly the same thing, code and compiled software solutions. Look, whatever it is, it's for the exclusive use. And he also says that – I'm sorry, but you're skipping a step, right? It means that the particular software code he developed is only to be used by JFACS. Right. But it doesn't mean that if he takes his inventive ideas of the algorithm and creates new software, that he doesn't have control of that. So as I said, there's two options here. Either whatever he created, he sold it as part of the agreement. What he sold was the code and compiled software solutions. So to the extent he contends that there's something he had more than that, that's not something that he's – That's not the subject of his – of this agreement. To the extent he had something else – now, he says this agreement isn't backwards looking. I disagree with that. Forget about that. Yeah, but to the extent there's something else, that's not redressable under a 256 claim because he didn't apply for – he abandoned that. We don't have a merits argument about abandonment here. We have to assume the correctness of his 256 claim to be the sole inventor on this patent. So for our standing argument, there's actually a couple of different arguments, and they're both raised in the briefing below and here. One is, is there injury in fact? The other one is, is there redressability? And he has changed his argument somewhat from what he argued in the court below in the sense that this argument that he somehow has additional functionality, an additional invention that's not covered by the SDA, that's not really an argument he made below. But to the extent he makes that argument now, that's not redressable by a 256 claim. That's a patent that maybe he had. His 256 claim on the merits is, I was the sole inventor. I should be the owner of this patent. You did not, and I don't see any findings, and I don't think you made an argument that even if he were the sole owner of this patent and he hadn't given away the ownership rights and that he hadn't promised to give away the ownership rights, that he had no stake in being the sole owner. The argument, Your Honor, we made is twofold. To the extent his argument is that he has some sort of interest in the patent or information that was conveyed to J2 as part of the agreement, he sold that. To the extent he had anything else, we have made the argument both in the district court and here that that's not redressable as a 256 claim, which is also a standing issue because it goes to redressability. Do you have to convince us that the language of that agreement specifically conveys the patent invention to your client for you to win? I think we have to. It's not just the agreement itself. I think there are other factors. And I think what we would say is that— And what other factors are those? Well, the court cited extensive factors, actually, in your decision, and it's the same factors that were cited in Tietz. The fact that he never participated in the filing of a patent application. The fact that for 20 years he didn't say anything, hey, where's my patent application. The fact that he didn't pay any of the maintenance fees or prosecution fees or he didn't participate. How does that go to—that goes to whether he invented it or whether he should have a correction claim? That goes to standing. It goes to the intent of the parties. And again, remember, under Tietz and under standard parts, there is a factual finding here that you can do in a 12B1 standard and say, what are the factual findings that look at the intent of the parties at the time of the transaction? And you can look at facts afterwards as well. And the court actually discussed this point, and it's very similar— Is there anything else contemporaneous to the signing of that agreement that would suggest he was hired to invent this? The invention described in the patent? I mean, yes. The whole structure of the agreement was that JFACS had created an invention. He cites— Besides the agreement. No, no. He cites the New York Times article that the court also cited to where the court said that these individuals at JFACS had dreamed up this concept, and then they go to him to implement it. And so— That sounds like this wasn't the hire to invent at all. Well, we've never taken the position that he's an inventor at all. That's his position. But the relationship is clear that whatever it is that we hired him to do, it was going to be owned by us. No, see, that's what I think is, to put it mildly, not clear from the agreement. The agreement is about the deliverable. It's not about the ownership of the invention on its face. Well, I guess I would say that to the extent there's something else that's not in deliverable, he's never applied for a patent on that. And I'm not aware of any— You applied for a patent on his invention. We applied for a patent on what we thought was our invention. And to the extent he had any role in that, our view is that he had signed it or contributed as part of the SDA. To the extent he is now coming along 20 years later and says, I am the only person—this is his argument. If we understand his argument, his argument is, I am the sole inventor with the sole right to apply for a patent. I've never seen a case that suggests that a Section 256 claim can be used— That's a merits—you may be right that 256 shouldn't provide relief in that circumstance, but that's a merits point. We have only in front of us necessarily on the assumption that he's right about his 256 claim whether he has a stake in this case. So respectfully, Judge Toronto, I agree with you that there are issues in the merits here as well, but there's also— And you made a bunch of those arguments which the judge did not rule on. He did not get to. Right. But there's also a question of redressability, which is a standing issue. It is a constitutional standing issue. You don't decide the merits in determining redressability. You assume the redressability and injury in fact are not quite perfect mirror images, but they're awfully close. But you still assume the merits—you assume that the plaintiff is right about the merits and ask, would that do him any good? I guess the question I would say on the redressability front is whether or not the purpose of a 256 claim is to redress someone who claims, I didn't file a patent in my invention. Somebody else did. Give me some cases that say in determining the redressability component of Article III, you inquire—you question the merits claim about either the cause of action that's being invoked or the correctness of the assertion that that cause of action merits—is one that generates liability. And maybe I'm misunderstanding or maybe I'm not characterizing myself correctly. I'm not suggesting that it's a merits issue. I'm suggesting— I'm suggesting it's a merits issue. So tell me where redressability doctrine says you get to make a little bit of judgment about the merits. So I don't think it does, but I also don't think I'm suggesting that it is a judgment on the merits. The point of redressability here is even if this is subject matter he invented, the question is whether or not he can get to there through a 256 claim. So to take the position that Your Honor articulated, even if what he's saying is true, the claims reflect what he invented, can he get there through a 256 claim? That's redressability. So on remand, if standing is—if it's reversed, you get to argue that 256 is not available for somebody alleging that I'm the sole inventor as opposed to a co-inventor or any number of other arguments about the scope of the 256 statutory cause of action. That's not an Article III standing question. That's my understanding of what redressability would mean in that context, is can you actually get the relief you're seeking if you're right? And my understanding is in this context, to the extent you get anything— If you're right, including, among other things, about the scope of the cause of action. Okay. I guess my understanding of redressability is a little bit different than that, but I understand the point. I think fundamentally here what we have is that somebody has brought a cause of action where— I'm sorry, I'm out of time. Our view is that the district court got it right on the standing issue because Mr. James, whatever he did under the contract, he assigned it, and to the extent there's anything else, it's not redressable on a 256 claim. Okay. Thank you, Your Honors. Mr. Boyd, you have four minutes. Thank you, John. I don't think I'll use it all. I think Judge Ronto, you're exactly right. This is premature to dismiss this case. Tell me why your opposite number is not right, that the district court was entitled to and did make factual findings that warrant the usual deference of factual findings. What's the procedural objection you have to the district courts having made certain findings about the SDA and surrounding circumstances? The district court didn't accept the factual statements in the complaint. It's true. I think you're—sorry, I forget the name, Mr. Rudenberg. I think he indicated that the district court was entitled to make factual findings at this stage. Why is that wrong? I think on jurisdictional issues, it's allowed to do that, but if those—under the Ninth Circuit law, if those jurisdictional issues are intertwined with the merits of the case, and I think we addressed this in our brief, I can provide you another site, then it's not entitled to do that. And so when they're intertwined like this, it gets you right back to where we're at here today, Your Honors, is making findings of fact that are contrary to the pleadings, and that's improper under Rule 12. And even if the judge—this court agrees that the judge can make factual findings, those are clearly erroneous factual findings, as Your Honor pointed out, with respect to the scope of the assignment in paragraph 3. It had nothing to do with the idea or the invention, but only with software. And then with respect to the other arguments, 20 years is too long. It's the discovery rule, another merits-based question. And again, the something more or something else is the invention, as Your Honors pointed out, and it's the software, the sole ownership and exclusive use is to the software to implement it. I mean, maybe going back to the first case we heard this morning, the idea was to use some type of programming to move a cursor without using a click, and that would be the invention. But the implementation is the specific software to do that, to implement that idea. Here we're talking about software. We're not talking about anything else, correct? No, Your Honor. If you look at the Claim 1, for example, and the 638 patent, it's hardware-based. It's what? It includes hardware, communication servers, packet switches, and the like. The patent itself is an idea of an assembly, and there's method claims as well in there. Where in the district court did you say to the district judge, it is premature for you to figure out what you think the SBA and surrounding circumstances indicate about whether Mr. James did assign his ownership rights or promised to assign? Where was your procedural objection before the district court to the district court seemingly resolving that question? I'm looking at the three pages or so in your opposition to the motion to dismiss. Give me a second. What you call your prematurity argument. Where was that made? My prematurity argument, Your Honor, is just to highlight that it's a fact-intensive question on what equity demands, and that is for a ruling for another day. When you say what equity demands, because I agree with Judge Toronto, I don't find this equity legal distinction very meaningful. Are you saying who owns the patent? Yes, Your Honor. Looking at all the facts, the surrounding circumstances, the comment of the party, the totality of the factual situation, and making that determination. But if we can conclude that, I get you. To me, I seem to think that that is a little bit of a mixed question of the merits and jurisdiction. Of course, if we conclude on the facts that your client has no right to the invention, then I assume you would agree that he lacks standing. If there's a meeting of the minds, Your Honor, that requires him to assign or to transfer those rights to JFAC, then I would agree with that. Or that they own them from the outset, that he was just hired to invent this. Only from the outset, Your Honor, would require a 261 transfer for the invention. Well, let's not go about that. To me, that's the hire-to-invent doctrine. If you're hired to do something, it's not that it's transferred, it's that you never own the rights to it. But to me, that seems to be a merits-based question, and it's at least in dispute here. Precisely, Your Honor. Okay. Thank you, Your Honor. You have your argument.